So Ordered.

Dated: February 16, 2021



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Glenn Randall Buettner,          Case No. 20-24696-GMH
                                    Chapter 13

        Debtor.

## DECISION AND ORDER

      The Bankruptcy Code requires for confirmation of a chapter 13 plan that the plan make holders of non-priority unsecured claims no worse off than they would be if the debtor's bankruptcy estate were liquidated under chapter 7. 11 U.S.C. §1325(a)(4). This is known as the "liquidation test" or the "best-interest-of-creditors" test. To apply the test the court must determine how much the plan pays holders of unsecured claims and compare that to how much holders of those claims would receive in a hypothetical chapter 7 liquidation. In this case confirmation depends on whether attorney's fees the debtor owes his lawyer for representing him in his chapter 13 case should reduce the amount unsecured creditors would receive in the hypothetical chapter 7 liquidation.

I

A

The debtor's 36-month plan proposes paying holders of allowed unsecured claims about $4,000, which the debtor contends is the amount unsecured creditors would receive in a chapter 7 liquidation. The trustee objects. He contends that liquidation of the debtor's estate would yield over $8,000 for distribution to unsecured creditors so the plan does not satisfy §1325(a)(4). The difference lies in the amount of fees the plan will pay chapter 13 counsel as an allowed administrative expense.

The parties have submitted a joint statement of stipulated facts, and they have each filed a brief. For the reasons described below, the trustee's objection is sustained.

B

The trustee argues that §1325(a)(4) requires the court to compare the value of property distributed under the plan on account of unsecured claims to what holders of those claims would receive in a hypothetical chapter 7 liquidation filed when the debtor filed his petition under chapter 13. ECF No. 27, at 2. From this the trustee concludes that "it is only the Chapter 7 administrative expenses which are deducted, not the combined Chapter 7 and Chapter 13 expenses." *Id.*

The trustee does not dispute that a chapter 7 trustee must pay allowed administrative expenses. Allowed administrative expenses in a chapter 13 case may include "reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case". 11 U.S.C. §330(a)(4)(B); see *id.* §503(b)(2). Any such compensation, if allowed in a chapter 7 case—e.g., after conversion from chapter 13—is entitled to priority over most unsecured claims, and the chapter 7 trustee must pay it before distributing any remaining property of the estate to the holders of any such lower-priority claims. 11 U.S.C. §§507(a)(2) & 726(a)(1).

Here lies the crux of the present dispute: The trustee contends that §1325(a)(4)'s liquidation test requires comparing the plan's distribution to unsecured creditors with

the distribution those creditors would receive had the debtor filed the case under chapter 7, thus eliminating the awarded fees from the chapter 7 side of the comparison. The debtor would instead have the court apply the liquidation test by asking what the chapter 7 distribution would be in this case filed under chapter 13 with allowed fee expenses that must be paid before making a distribution to unsecured creditors.

II

Section 1325(a)(4) identifies "the effective date of the plan" as the time to compare the plan's distribution to unsecured creditors with how much those creditors would receive if the debtor's estate were liquidated under chapter 7; it provides that the court shall confirm a plan if, among other things, "the value, *as of the effective date of the plan*, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 . . . on such date". §1325(a)(4) (emphasis added). The Bankruptcy Code does not define "effective date of the plan", even though the term is used repeatedly in the sections governing plan confirmation. See §1325(a)(4), (a)(5) & (b)(1); see also 11 U.S.C. §943(b)(5); *id.* §1129(a)(7), (a)(9), (a)(12), (a)(15) & (b)(2); *id.* §1225(a)(4), (a)(5) & (b)(1). So, one turns first to the phrase's ordinary meaning. See *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759 (2018).

"Effective date of the plan" is among the Bankruptcy Code's clearer terms. In this context, "effective" plainly means "operative". *Webster's Third New International Dictionary* 724 (2002); see also *Black's Law Dictionary* (11th ed. 2019), Westlaw Edge ("in operation at a given time"). The plan is operative when its terms are binding on the debtor and creditors—i.e., when the court confirms it. 11 U.S.C. §1327(a); see also *In re Cannella*, No. 14-21398, 2015 WL 1208679, at *2 (Bankr. D. Kan. Mar. 12, 2015) ("Reason dictates that a chapter 13 plan must actually be confirmed before it can have an effective date."); W. Homer Drake, Jr., et al., *Chapter 13 Practice & Procedure* §7:9 (2020), Westlaw Edge ("Logically, a plan's effective date cannot occur before it is confirmed.").

The Supreme Court, in reading §1325, has twice treated "as of the effective date of the plan" as "when the plan is confirmed". In *Hamilton v. Lanning* the Court construed "as of the effective date of the plan" in determining whether the debtor's plan "provide[d] that all of the debtor's projected disposable income to be received during the applicable commitment period" would "be applied to make payments to unsecured creditors under the plan" as required by §1325(b)(1)(B). The Court stated, "[Section] 1325(b)(1) directs courts to determine projected disposable income 'as of the effective date of the plan,' *which is the date on which the plan is confirmed and becomes binding*." 560 U.S. 505, 518 (2010) (emphasis added) (citing §1327(a)). The Court read the phrase the same way in *Rake v. Wade*, explaining that §1325(a)(5)(B)(ii)—which requires that, "with respect to each allowed secured claim provided for by the plan", "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim"—"guarantees that property distributed under a plan on account of a claim . . . equal[s] the present dollar value of such claim *as of the confirmation date*." 508 U.S. 464, 469 (1993) (emphasis added). The Court's construction—that a plan's "effective date" occurs at confirmation because that is when the plan becomes binding—is equally applicable to §1325(a)(4).

The trustee does not address the plain meaning of "effective date" or the Supreme Court's equating of that date with the date on which the plan is confirmed. He instead relies on non-binding decisions that conclude on policy grounds that §1325(a)(4) must be understood to guarantee unsecured creditors a distribution under the plan that equals the amount they would receive if the debtor had filed the case under chapter 7. See ECF No. 27, at 2 (citing *In re Goudreau*, 530 B.R. 783 (Bankr. D. Kan. 2015); *In re Cowger*, No. 13-71433, 2014 WL 318241 (Bankr. C.D. Ill. Jan. 29, 2014)). These cases do not mention *Lanning* or *Rake*. At most they suggest that good bankruptcy policy does not favor allowing a debtor to pay unsecured creditors less through a chapter 13 plan than those creditors would receive had the debtor filed the case under chapter 7. This

policy holds some intuitive appeal: why should a debtor's election to file under chapter 13 and pay his lawyer through the plan deprive unsecured creditors of the liquidation value of the debtor's non-exempt assets? But policy—no matter how strong its appeal—cannot overcome either the statute's plain text or the Supreme Court's construction of the same phrase elsewhere in the same section of the Bankruptcy Code.[*]

What is more, there seems to be little practical benefit to viewing §1325(a)(4) to require the plan to provide unsecured creditors with the benefit of a hypothetical distribution in a chapter 7 case that the debtor didn't file. A chapter 13 case that has proceeded to a confirmation hearing cannot be rewound back to the filing of the petition such that it can instead proceed from the start as a chapter 7 case. The court can only deny confirmation and consider whether to allow the debtor to file another plan or modify the plan, convert the case to a case under chapter 7, or dismiss the case. See 11 U.S.C. §1307(c)(5). But see §1307(f) (providing that, "if the debtor is a farmer", then "[t]he court may not convert [the] case . . . to a case under chapter 7 . . . unless the debtor requests such conversion"). Consequently, the benefit to the trustee's reading of §1325(a)(4) appears to be largely deterrent, and it presumes that some nonnegligible number of chapter 13 cases are (or would otherwise be) filed, in whole or in part, by

---

[*] The decisions on which the trustee relies are unpersuasive. *Goudreau*, without mention of *Lanning* or *Rake*, reasons "that . . . the date the Chapter 13 petition was filed should be considered the 'effective date of the plan' for purposes of the § 1325(a)(4) liquidation analysis." 530 B.R. at 788. It relies on *Jensen v. Dunivent (In re Dewey)*'s statement, "The court does not . . . combine Chapter 13 and Chapter 7 expenses in calculating the amount to be distributed in Chapter 7 under the best interests of creditors test." 237 B.R. 783, 788 (B.A.P. 10th Cir. 1999). This is an ipse dixit: *Dewey* does not explain how its conclusion fits §1325(a)(4)'s text or provide any rationale for it. *Dewey* cites three bankruptcy-court decisions, but none of them addresses the issue. See *In re Gatton*, 197 B.R. 331 (Bankr. D. Colo. 1996); *In re Ward*, 129 B.R. 664, 670–71 (Bankr. W.D. Okla. 1991); *In re Barth*, 83 B.R. 204, 206 (Bankr. D. Conn. 1988). *Cowger* bases its conclusion on *Dewey* and *Lamie v. U.S. Trustee*, 540 U.S. 526 (2004), which, in holding that a chapter 7 debtor's attorney who is not retained under 11 U.S.C. §327 cannot be compensated by the bankruptcy estate under §330(a)(1), makes no mention of §1325(a)(4), the liquidation test, or anything else bearing on the issue at hand. 2014 WL 318241, at *6–7 & n.3.

debtors who would rather spend three to five years making regular payments to the trustee for the benefit of their attorneys than pay their unsecured creditors through the liquidation of any non-exempt assets. If that is a concern that cannot adequately be remedied under §1325 as currently codified—e.g., as a matter of "good faith" under §1325(a)(3) & (7)—then it must be addressed, if at all, by Congress.

III

The parties agree that the debtor "has a total of $10,301.88 of non-exempt assets, which would be liquidated in a chapter 7 case". ECF No. 28, at 2, ¶15. They additionally agree that a "chapter 7 trustee would receive a commission of $1,780.19 for disbursing" this amount to unsecured creditors. *Id.* at 3, ¶16. Accordingly, if the estate of the debtor were liquidated under chapter 7 on the plan's effective date, holders of non-priority unsecured claims would receive their pro rata share of no more than $8,521.69. This is more than the $4,036.54 the plan pays to unsecured creditors. But, again, the debtor contends the $8,521.69 must be further reduced by his counsel's fees, which total $4,486.

As explained above, whether payment of a chapter 13 debtor's attorney's fees is factored into the chapter 7 side of the liquidation test depends on whether the fees are an allowed administrative expense on the plan's effective date, i.e., on the confirmation date. The debtor's counsel has not filed an application for compensation, so counsel's fees have not been allowed. But Local Rule 2016.1 provides that "[a]ttorneys for Chapter 13 debtors need not file an application for compensation" under specified circumstances, including when "a confirmed plan directs the trustee to pay attorney compensation in an amount that is not greater than the presumed reasonable fee and no party has objected to the fee". Local Rule 2016.1(b)(1) (Bankr. E.D. Wis. Nov. 1, 2017), available at https://www.wieb.uscourts.gov/local-rules. The debtor's plan directs the trustee to pay all allowed priority claims in full. ECF No. 2, at 3, ¶4.1.

The plan estimates, and the parties stipulate, that attorney compensation to be paid under the plan equals $4,486, which is not greater than the current presumed

reasonable fee. *Id.* at 4, ¶4.3; ECF No. 28, at 3, ¶17; see Appendix to Local Rules 2016.1 & 3015(d), available at https://www.wieb.uscourts.gov/local-rules. No one has objected to counsel's fee or the proposed plan's direction to pay fees in that amount, and the time to object has expired. Consequently, when the plan is confirmed—i.e., on the effective date of the plan—counsel's fees of $4,486 will be an allowed administrative expense, and a chapter 7 trustee would be required to pay them out of the $8,521.69 before paying the holders of lower-priority unsecured claims (here, *all* the unsecured claims). Thus, the amount that would be paid on such claims if the estate were liquidated under chapter 7 is $4,035.69.

As noted above, the amount that the plan provides to be distributed on account of allowed unsecured claims is $4,036.54, which is $0.85 more than the amount that would be paid on such claims if the estate of the debtor were liquidated under chapter 7. But §1325(a)(4) requires that "the amount that would be paid on [each allowed unsecured] claim if the estate of the debtor were liquidated under chapter 7 . . . on [the effective date of the plan]" must be less than or equal to "*the value, as of the effective date of the plan*, of property to be distributed under the plan on account of each allowed unsecured claim". In *Rake*, as quoted above, the Supreme Court construed substantially similar language in §1325(a)(5)(B)(ii)—providing, with respect to certain claims, that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim" must be "not less than the allowed amount of such claim"—to mean "that property distributed under a plan on account of a claim, including deferred cash payments . . . , must equal *the present dollar value* of such claim as of the confirmation date." 508 U.S. at 469 (emphasis added) (citation omitted); see also *Till v. SCS Credit Corp.*, 541 U.S. 465, 473–77 (2004) (Stevens, J.) ("A debtor's promise of future payments is worth less than an immediate payment of the same total amount because the creditor cannot use the money right away, inflation may cause the value of the dollar to decline before the debtor pays, and there is always some risk of

nonpayment.").

Here, the plan provides that, before any payments are made on any nonpriority unsecured claims, the debtor's monthly plan payments of $283.32, less the trustee's fees on those payments, will *all* be distributed to pay the debtor's attorney's fees. Again, his attorney's fees total $4,486. Consequently, the plan does not appear to provide for the distribution of any property under the plan on account of any nonpriority unsecured claims until more than a year after confirmation. And even if the amount to be paid under the plan on those claims ($4,036.54) would be paid *in full* at that time—which it will not, as the plan provides for payments over three years after confirmation—the present value of that amount would still be less than the amount that would be paid on those claims if the estate were liquidated under chapter 7 ($4,035.69). See, e.g., *In re Cook*, 322 B.R. 336, 339 & n.6 (Bankr. N.D. Ohio 2005) ("[T]he Code requires Debtor to pay interest to his unsecured creditors as directed in section 1325(a)(4)", "the language of [which] indicates that a stream of payments to unsecured creditors must always be discounted to present value when conducting a 'best interests' analysis."). Because the *value as of the effective date of the plan* of the amount to be distributed on allowed unsecured claims is not greater than or equal to the amount that would be paid on such claims through liquidation under chapter 7, §1325(a)(4) is not satisfied.

IV

For these reasons, IT IS ORDERED that the trustee's objection to confirmation is sustained, and confirmation of the plan is denied.

IT IS FURTHER ORDERED that the debtor must file an amended plan by no later than **30 days** after the date on which this order is entered.

IT IS FURTHER ORDERED that if the debtor does not timely file an amended plan as ordered above, the court may dismiss this case without further notice or opportunity for a hearing.

# # # #